# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR CASTRO,<br><br>        Petitioner,<br><br>  v.<br><br>A.K. SCRIBNER,<br><br>        Respondent. | 1:05-CV-01435 LJO JMD HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Hector Castro ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation at Corcoran State Prison, pursuant to a judgment of the Fresno County Superior Court. (Pet. at 3). Petitioner was convicted in 1982 of second degree murder with a sentence enhancement for the use of a deadly weapon in the commission of the offense. (Pet. at 3; Answer at 1). Petitioner was sentenced to an aggregate term of twenty years-to-life. (Answer at 1).

On July 28, 2004, Petitioner appeared before the California Board of Prison Terms[1] (the "Board") for a parole consideration hearing. (Answer at 2). The Board found Petitioner unsuitable for parole. (Id).

On September 7, 2004, Petitioner challenged the Board's denial of parole, seeking habeas

---

[1] The Board of Prison Terms was replaced, effective July 1, 2005, by the Board of Parole Hearings ("BPH"). *See* In re Olson, 149 Cal.App.2th 790, 793 n. 1 (Cal. Ct. App. 2007). The Board of Parole Hearings has the same duties and functions with respect to adult term setting and parole release decisions as its predecessor. Id. (citing Cal. Penal Code, §§ 5075, 5075.1, 3041, Cal. Gov. Code, §§ 12838, 12838.4, added or amended by (Stats.2005, ch. 10 (Sen. Bill No. 737), §§ 6, 29, 46, 47, pp. 1-21, eff. May 10, 2005, operative July 1, 2005)).

1 corpus relief before the Fresno County Superior Court. (Answer Ex. 3). The Superior Court, in the
2 only reasoned decision issued in this case, denied Petitioner's request for relief on September 21,
3 2004. (Id).

4     On October 7, 2004, Petitioner sought habeas corpus relief before the California Court of
5 Appeal. (Answer Ex. 4). Petitioner's request was summarily denied by the state appellate court on
6 October 29, 2004. (Id).

7     Petitioner subsequently filed a petition for writ of habeas corpus with the California Supreme
8 Court. (Answer Ex. 5.) The California Supreme Court summarily denied the petition on September
9 21, 2005. (Id).

10     On November 14, 2005, Petitioner filed the instant federal petition for writ of habeas corpus.
11 (Pet. at 1). Petitioner contends that the Board's conclusion that Petitioner was unsuitable for parole
12 relied on false evidence pertaining to the gravity of the offense. Additionally, Petitioner contends
13 that the Board's finding that Petitioner was unsuitable is unsupported by some evidence.

14     On February 19, 2008, Respondent filed a response to the petition.

15     On March 17, 2008, Petitioner filed a reply to Respondent's answer.

16 **FACTUAL BACKGROUND**

17     California regulations permit consideration of the circumstances of the underlying offense in
18 determining whether a prisoner is suitable for parole. *See* Cal. Code Regs., § 2402(c)(1). Thus, the
19 facts of the underlying offense are relevant to the determination of whether Petitioner posed a danger
20 to the public safety. The Board read into the record of the parole determination hearing a report
21 summarizing the events of the crime. (Answer Ex. 2 at 14). The relevant portion of the report, as
22 read into the record by the Board, stated that:

23     [On] September 13th, 1981, at approximately 1:00 a.m., Hector Castro was one of three or four men inside the Hip Hugger Bar located at 1266 N. Abbey in Fresno,
24 California. Additionally, a group of approximately four men were also located inside the establishment. During the course of the evening, an argument erupted between
25 these two groups and escalated with Castro and his friends throwing beer glasses, pitchers, chairs, and other objects at an individual in the other group, which was on
26 the telephone standing behind the bar. Mr. Hugh Houston, victim, was inside the bar, had no involvement in the altercation nor was he acquainted with any of these men.
27 When Castro and his friends began throwing objects, Mr. Houston left the area fo the bar and stood on the opposite side of the partition near the door. Castro and his
28 friends ran out of the door, ran back into the bar, threw more objects in the direction

of the bar area, and ran out again. Mr. Houston looked around the partition near the door and started to leave.

Simultaneously, Castro and his friends rushed back through the door, pushing Mr. Houston back, and began picking up and throwing more objections and leaving again. Mr. Houston started toward the door in an attempt to leave the establishment once more. However, Castro and one of his friends returned through the door, pushing Mr. Houston back, and Mr. Houston grabbed a can of Mace and began spraying Castro's friend. Castro's friend was in front of Mr. Houston and he held both of Mr. Houston's arms down by his sides. While Mr. Houston's arms were being held down by his sides by Castro's friend, Castro came from behind Mr. Houston, reached around Mr. Houston's waist with his left hand, and with his right hand made an upward motion stabbing Mr. Houston twice...Houston was pronounced dead at approximately 0207 a.m. on August 24th, 1981. Mr. Houston received two stab wounds to the chest, one which completely penetrated his lung with a depth of three and one-half inches. The other stab wound completely penetrated his heart with a depth of five inches. Mr. Castro was convicted by a jury of Penal Code 187, murder [in the] second degree on March 17th, 1982.

(Answer Ex. 2 at 14-16). Petitioner's version of events contested the presence of a third party holding the victim's arm when Petitioner stabbed him. (Id at 17-18). Further, Petitioner alleged that his vision was obstructed by the mace and his arm, which he had brought up to cover his eyes, when he lunged and stabbed the victim. (Id. at 21-22). Additionally, Petitioner noted that the altercation resulting in the stabbing was provoked by racial slurs aimed at Petitioner by another party. (Id. at 26-27).

## DISCUSSION

**I.     Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. Petitioner's custody arose from a conviction in the Fresno County Superior Court and he is currently incarcerated at Corcoran State Prison in Kings County. Fresno and Kings County are within this judicial district. 28 U.S.C. § 84(b). As an application for writ of habeas corpus may be filed in either the district court where Petitioner is currently incarcerated or the in the district Petitioner was sentenced, the Court has jurisdiction over the action and is the proper venue. *See* 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment.  Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was filed on August 10, 2005 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

## II.     Standard of Review

While Petitioner is not challenging the underlying state court conviction, Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment.  Thus, 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition since he satisfies the threshold requirement of being in custody pursuant to a state court judgment.  Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction'").

Since Petitioner filed his petition after the effective date of AEDPA, his petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.""  Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir.1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859, 123 S.Ct. 231 (2002), *rehearing denied*, 537 U.S. 1149, 123 S.Ct. 955 (2003).

### III.    Review of Petitioner's Claim

The petition sets forth two grounds for relief. In his first ground for relief, Petitioner contends that the Board's characterization of his commitment offense is based on false evidence and thus constitutes a violation of his right to due process. In his second ground for relief, Petitioner

contends that the Board's conclusions were unsupported by some evidence. These claims were presented in a petition for writ of habeas corpus to the Fresno County Superior Court, which denied the petition summarily stating that the record was incomplete and there was some evidence to support the Board's decision. (Answer Ex. 3). The issue was then raised in respective petitions for writ of habeas corpus to the California Court of Appeal and California Supreme Court, which summarily denied the petitions. (Answer Exs. 4-5). As a result of the unexplained rejections, this Court conducts an independent review of the record to decide whether the state court's decision was objectively reasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Having done so, the Court concludes that Petitioner's constitutional rights, and more specifically his right to due process of the law, were not violated by the Board's denial of parole.

**A.    Ground One**

Petitioner contends that the Board's characterization of the offense as particularly egregious was based on a false theory of liability. (Pet. at 5). Specifically, Petitioner disputes the Board's finding that he acted in concert with another individual to kill the victim.

The Supreme Court held in Napue v. People of the State of Illinois, 360 U.S. 264, 269 (1959), that the use of false evidence by the state, or a failure to correct false evidence, violates a defendant's right to due process of the law. Id; *see also* Hoovey v. Ayers, 458 F.3d 892, 915 (9th Cir. 2006). "To prevail on a Napue claim, the petitioner must show that '(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) ... the false testimony was material.'" Hoovey, 458 F.3d at 915 (quoting Hayes v. Brown, 399 F.3d 972, 984 (9th Cir. 2005) (en banc)). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).

Here, Petitioner fails to offer anything more than mere allegations that the theory of liability was false. *See* Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995) (stating that conclusory allegations are not sufficient to support habeas relief). Petitioner does not actually contend that any piece of evidence was false nor has he offered any proof establishing that any of the evidence admitted at the trial was false. Consequently, Petitioner's contention is conclusory and insufficient

as a basis for relief.

Furthermore, "[t]he requirements of due process are satisfied if some evidence supports the [Board's] decision...Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or *weighing of the evidence*." Hill, 472 U.S. at 455 (emphasis added).  Thus the relevant inquiry before this court is not whether the Board correctly weighed the evidence at Petitioner's hearing but whether there is some evidence that supports the Board's determination that Petitioner poses a current unreasonable risk of danger.  *See* Sass, 461 F.3d at 1128.  In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence.  Id. at 1128 (citing Hill, 472 U.S. at 455-456).  As discussed below, "some evidence" supports the Board's finding that Petitioner posed an unreasonable risk of danger to the public safety.  Therefore, Petitioner's right to due process of the law was not violated when the Board denied Petitioner parole.

### B.     Ground Two

In his second ground for relief, Petitioner contends that the Board "did not provide some evidence that Petitioner is not suitable for parole."[2]  (Pet. at 6).  Respondent contends that Petitioner does not have a liberty interest in parole and even assuming that such a liberty interest existed, due process merely entitles Petitioner the right to be heard and for the Board to state their reasons. Respondent further asserts that clearly establish Federal law does not require that this sourt apply the "some evidence" standard.

"We analyze a due process claim in two steps.  '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" Sass, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date.

---

[2] This Court notes that Petitioner misconstrues the role that the "some evidence" standard plays in a determination of parole.  The some evidence standard is the applicable standard for judicial review of the Board's decision regarding parole suitability.  *See* Sass, 461 F.3d at 1128 (citations omitted).  Petitioner has cited to no legal authority, nor is the Court aware of any, which requires the Board to apply the some evidence standard to their determinations.  Thus the inquiry in this section is wholey focused on whether some evidence supports the Board's determination that Petitioner poses a current unreasonable risk of danger to the public.

1  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).  However, where a state's statutory scheme for parole
2  contains mandatory language, the presumption exists "that parole release will be granted' when or
3  unless certain designated findings are made, and thereby give rise to a constitutional liberty
4  interest.'"  McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (quoting Greenholtz v. Inmates
5  of Nebraska Penal, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a
6  cognizable liberty interest in release on parole).  California Penal Code section 3041 contains the
7  requisite mandatory language, thus vesting in California prisoners "whose sentence provide for the
8  possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release
9  date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause."
10 Irons, 505 F.3d at 850; *see* McQuillion, 306 F.3d at 903; *see also* Biggs v. Terhune, 334 F.3d 910,
11 914 (9th Cir. 2003).  Even a prisoner who has not yet been granted a parole date has a
12 constitutionally protected liberty interest in a parole date.  Sass, 461 F.3d at 1123.  As illustrated in
13 the above cited decisions, and contrary to Respondent's contentions, the Ninth Circuit has
14 consistently recognized that a California prisoner has a protected liberty interest.

15      Respondent is correct in asserting that, notwithstanding a prisoner's liberty interest in a
16 parole date,  a parole release determination is not subject to all of the due process protections of an
17 adversarial proceeding.  Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); *see*
18 *also* Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural
19 protections as demanded by the particular situations).  "[S]ince the setting of a minimum term is not
20 part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not
21 constitutionally mandated, even when a protected liberty interest exists."  Pedro, 825 F.2d at 1399;
22 Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987).  At a state parole board
23 proceeding, an inmate is entitled to receive advance written notice of a hearing.  Pedro, 825 F.2d at
24 1399. Additionally, the inmate must be afforded an "opportunity to be heard" and told why "he falls
25 short of qualifying for parole."[3]  Greenholtz, 442 U.S. at 16.

---

[3] Petitioner does not contend, nor would the record support, that he was deprived of other due process rights afforded a prisoner at a parole hearing–such as  advance written notice of the hearing, an opportunity to be heard, and a statement of the reasons why the Board denied parole.  *See* Pedro, 825 F.2d at 1399; Greenholtz, 442 U.S. at 16.  Consequently, Petitioner's due process claim, and this decision, centers around whether "some evidence" supported the Board's finding that

However, the Ninth Circuit has consistently recognized that due process additionally requires that the Board's decision be supported by "some evidence." *See* Irons, 505 F.3d at 851; *also* Sass, 461 F.3d at 1128-1129. "In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" Sass, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations. Irons, 505 F.3d at 851. The "some evidence" standard as applied to parole determinations is clearly established Federal law, pursuant to the decisions of the Supreme Court. Id.; Sass, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. Superintendent v. Hill, 472 U.S. 445, 455 (1985).

The discussion of whether "some evidence" exists to support the Board's conclusion, that Petitioner posed a current unreasonable risk of danger to the public safety, is framed by the state's statutes and regulations governing parole suitability determinations. Irons, 505 F.3d at 851; Briggs, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see* In re Dannenberg, 34 Cal.4th 1061, 1078, 1080 (Cal. 2005). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; Irons, 505 F.3d at 851-852; Biggs, 334 F.3d at 915-916. The regulation's criteria states that:

---

Petitioner posed an unreasonable risk of danger to the public safety.

> All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstance which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include (1) the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; (2) a record, prior to incarceration for the underlying offense, of violence; (3) a history of unstable relationships with others; (4) sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the underlying offense; (6) serious misconduct in jail. Cal. Code Regs., tit. 15, § 2402 (c)(1)-(6); *also* In re Shaputis, 82 Cal.Rptr.3d 213, 225 n. 14 (Cal. 2008) (holding that "some evidence" standard was met where Petitioner failed to gain insight into his previous violent behavior and to take responsibility for the commitment offense).

The California Supreme Court recently stated reiterated that, consistent with California regulations, the aggravated circumstances of the commitment offense may serve as a basis for denying parole but that:

> [T]he aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

In re Lawrence, 44 Cal.4th 1181,1214 (Cal. 2008). The Lawrence court further clarified that some evidence will support the Board or Governor's reliance on immutable facts, such as an inmate's criminal history or the commitment offense, if those facts support "the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety." Id. at 1221 (emphasis in original)(holding that relevant inquiry before a reviewing court is whether some evidence supports the decision that the inmate constitutes a current danger to the public safety, not merely whether some evidence confirms the existence of the Board's factual findings). The Lawrence court had been

faced with a denial of parole resting primarily, if not entirely, upon the commitment offense, which had occurred thirty-six years prior to the denial. Noting that "all of the information in [the] postconviction record supports the determination that the inmate is rehabilitated and no longer poses a danger to public safety," the California Supreme Court found that the commitment offense was not probative of petitioner's current dangerousness. Id. at 1226-27.

The Ninth Circuit has additionally expressed reservations about denying parole based solely on immutable factors but permitted such reliance in certain circumstances. Briggs v. Terhune, 334 F.3d 910, 916-917 (9th Cir. 2003)(stating that, "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct of prior imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."); Sass, 461 F.3d at 1139-1140 (Reinhardt, J., dissenting); Irons, 505 F.3d at 853-854 (holding, in discussing Sass and Briggs, that "[a]ll we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms").

After reviewing the record, this Court concludes that the Board's decision was supported by "some evidence." Petitioner's right to due process of the law was not violated as he received all the process due to him under the governing law. See Sass, 461 F.3d at 1129. The Board's decision rested on several factors, including the commitment offense, Petitioner's history of assaultive behavior, Petitioner's unstable social history, Petitioner's failure to develop a marketable skill and limited vocational upgrades, the unfavorable psychological evaluation by Dr. Kederski, unacceptable parole employment plans, and the opposition by the District Attorney's Office. (Answer Ex. 2 at 82-87).

The most important factor in the Board's denial of parole seems to have been the psychological evaluation. California regulations classifies "past and present attitude toward the crime" as a relevant factor to consider in determining parole suitability. Cal. Code Regs., tit. 15, § 2402(b). Additionally, signs of remorse is a positive factor for parole suitability with the inquiry focused on whether a petitioner "performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving the suffering of the victim, or

indicating that he understand the nature and magnitude of the offense." Cal. Code Regs., tit. 15, § 2402(d)(3).

Consistent with these regulations, the Board relied on the psychological report by Dr. Kederski in determining that Petitioner posed a current unreasonable risk of danger to the public and therefore was unsuitable for parole. (Answer Ex. 2 at 85). The Board's decision specifically cited to the report's findings that Petitioner lacked remorse or guilt for the crime, minimized his responsibility for the commitment offense by attempting to justify the commitment offense, vilified the victim, and believed in various bizarre ideas. (Id. at 85-86). The Board noted that a primary reason for the denial of parole was time to assess Petitioner's diagnosis of an Axis II disorder, referenced in the psychological report as Schizotype Personality Disorder with antisocial and paranoid features. (Id. at 87 and 54). During the course of the hearing, portions of the psychological evaluation were read into the record by the Board, including Dr. Kederski's statement that a "factor of concern is the minimizing of responsibility for the life crime and the degree to which the inmate feels justified because there was a provocation by the victim. The inmate does not seem to clearly indicate that the victim's violence toward him does not excuse or justify a separate retaliatory, escalating response on his part." (Id. at 55). This Board further noted that according to the report Petitioner displayed a lack of remorse, guilt, or empathy, and went even further by "vilif[ying] the victim altogether by calling him a KKK member without any known basis for doing so." (Id. at 58).

Petitioner's response at the parole hearing also evidenced his attempted justification of the crime by vilifying the victim. Petitioner responded to the statements contained in the psychological evaluation by attempting to justify his commission of the crime and pointing to evidence that the victim was a member of the KKK. (Id. at 58-59). Petitioner further argued that the victim was a member of the KKK in his statement of why he was suitable for parole. (Id. at 78). This obvious lack of remorse and attempt to justify his crime by vilifying the victim was, as stated by the Board, "something that bears directly on whether [Petitioner] is ready to be paroled or not."

The Board further found that the commitment offense weighed against a finding of parole suitability. *See* Cal. Code Regs., tit. 15, § 2402(c)(1). Citing to the Statement of Facts, the Board noted that the murder was committed in a dispassionate or calculated manner as the victim was held

down as Petitioner stabbed him. (Id. at 82). The Board further noted the obvious and exceptionally callous disregard for human suffering evidenced by the two stab wounds penetrating the victim's heart and lung. *See* Cal. Code Regs., tit. 15, § 2402(c)(1)(D); *also* Answer Ex. 2. at 82-83. Even Petitioner's version of events, in which he lunged in a stabbing motion in front of him while temporarily blinded by the mace evidences a callous disregard for human suffering. (Answer Ex. 2 at 21-22). Despite Petitioner's assertion otherwise, brandishing a knife in a thrusting motion with enough force to drive the weapon five inches into the victim's heart does display a callous disregard for both human suffering and human life considering Petitioner knew there was someone in that immediate vicinity. The Board further observed that the motive for the crime was inexplicable and trivial compared to the offense. Cal. Code Regs., tit. 15, § 2402(c)(1)(E). The victim was a bystander to an altercation between Petitioner and a third party and only action seems to have been to attempt to intervene in the escalating altercation and using mace on Petitioner immediately prior to the stabbing. (Answer Ex. 2 at 83).

Petitioner's history of assaultive behavior and unstable social history also served as a basis upon which the Board denied parole. *See* Cal. Code Regs., tit. 15, § 2402(c)(2) and (3). Pointing to Petitioner's prior drug abuse, extensive juvenile history, and failed previous attempts to profit from probation, the Board found that Petitioner's previous record of violence and unstable social history weighed in favor of denying parole. (Id. at 83-84). As revealed by Petitioner's rap sheet, Petitioner's prior violent conduct included a conviction for robbery with a firearm and battery of a peace officer. (Id. at 33-34). Petitioner's juvenile record was extensive and a Board report noted incidents of petty theft, probation violations, and auto theft in Petitioner's juvenile history. (Id. at 39-40). Furthermore, the Board noted that Petitioner's record revealed that previous attempts at probation had failed and Petitioner was on probation at the time he committed the underlying offense. (Id. at 84).

This evidence taken as a whole is sufficient to show that it would not be unreasonable for a court to conclude that there was "some evidence" supporting the Board's determination that Petitioner posed an unreasonable risk of danger to society if released from prison. *See* Cal. Code Regs., tit. 15, § 2402(b) ("Circumstances which taken alone may not firmly establish unsuitability for

parole may contribute to a pattern which results in a finding of unsuitability"). Similar to the case decided by the California Supreme Court in <u>Shaputis</u>, Petitioner's current dangerousness is evidenced by his failure to take responsibility for his crime. In attempting to justify his crime by vilifying the victim, Petitioner does not evidence someone who believes that his crime was wrong nor that he has been rehabilitated such that he would not commit this crime again. Like <u>Shaputis</u>, this failure to take responsibility for his crime, combined with the circumstances of the commitment offense, his history of assaultive behavior, unstable social history, and lack of viable parole plans is enough evidence for the Board to conclude that Petitioner posed a current unreasonable risk of danger to the public safety.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 24, 2008         /s/ John M. Dixon**
                                    UNITED STATES MAGISTRATE JUDGE